IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NICHOLAS HURYSH, JR.,** | |
| *Plaintiff*, | |
| v. | Civil No.: 8:25-cv-00507-JRR |
| **MAXISIQ, INC. f/k/a IOMAXIS, LLC d/b/a IOMAXIS,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

Pending before the court is Defendant's Motion to Dismiss. (ECF No. 16, the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be denied.

## I. BACKGROUND[1]

Plaintiff, Nicholas Hurysh, Jr., a citizen and resident of Maryland, initiated this action against Defendant, MAXISIQ, Inc., f/k/a IOMAXIS, LLC d/b/a IOMAXIS ("IOMAXIS"), a corporation incorporated in Delaware with its principal place of business in Virginia. (ECF No. 12 at ¶¶ 1–2.) Plaintiff was an employee of IOMAXIS from 2004 until his termination in August 2020. *Id.* at ¶ 3. He was also a member of, and held a 10% interest in, IOMAXIS. Plaintiff was removed as an owner in March 2021. *Id.* Plaintiff contends the termination of his employment and his removal as an owner was improper. *Id.* at ¶ 1.[2]

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 12.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[2] Since Plaintiff's termination as an employee and removal as an owner of Defendant IOMAXIS, the parties have been involved in extensive litigation. Defendant has initiated two actions against Plaintiff in this court. Case No. 8:20-cv-3612-JRR was voluntarily dismissed by Defendant on August 18, 2023. Case No. 8:22-cv-00314-JRR remains pending and is currently scheduled for trial in February 2026.

On April 11, 2024, Plaintiff received a Form 1099-MISC issued by Defendant for calendar year 2023 reporting payments to Plaintiff in the amount of $1,116,005.22 (ECF No. 12 at ¶ 21.) On January 30, 2025, Plaintiff received a second Form 1099-MISC from Defendant for calendar year 2024 reporting payments in the amount of $1,086,386.49. *Id.* at ¶ 24. Plaintiff alleges he did not receive any payments from Defendant during 2023 or 2024. *Id.* at ¶¶ 22, 25. Plaintiff asserts that, through his counsel, he attempted to contact Defendant and its counsel on numerous occasions seeking documentation or explanation as to why he received the 1099 forms, but received no response. *Id.* at ¶¶ 23, 26.

Plaintiff sets forth the relevant portions of the Internal Revenue Code ("IRC") and the Internal Revenue Service ("IRS") instructions regarding the provision of a Form 1099-MISC. Under the IRC, § 6041 states in pertinent part:

> "All persons engaged in a trade or business and making payment in the course of such trade or business to another person, of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income . . . of $600 or more in any taxable year, . . . shall render a true and accurate return to the Secretary, setting forth the amount of such gains, profits, and income[.]"

26 U.S.C. § 6041(a). The IRS instructions for Form 1099-MISC state in pertinent part:

> File Form 1099-MISC, Miscellaneous Income, for each person to whom you have paid during the year:
> - At least $10 in royalties or broker payments in lieu of dividends or tax-exempt interest;
> - At least lease $600 in rents, services (including parts and materials), prizes and awards, other income payments, medical and health care payments, crop insurance proceeds, cash payments for fish (or other aquatic life) you purchase from anyone engaged in the trade or business of catching fish, generally, the cash paid from a notional principal contract to an individual, partnership, or estate; payments to an attorney; or any fishing boat proceeds.

(ECF No. 12 at ¶ 19.)

Plaintiff claims that Defendant's provision of the Forms 1099-MISC, and its failure to provide him with the sums identified, is fraudulent under the IRC, specifically 26 U.S.C. § 7434; and Plaintiff contends Defendant "has been unjustly enriched by its failure to pay amounts owed to [him.]" (ECF No. 12 at ¶¶ 27–47.) Accordingly, Plaintiff's Amended Complaint raises the following counts: Unjust Enrichment (Count I); Fraud (Count II); and Civil Damages for Fraudulent Filing of Information Returns, 26 U.S.C. § 7434 (Count III). *Id.*

Plaintiff initiated this action on February 18, 2025 (ECF No. 1) and Defendant filed Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction on April 23, 2025. (ECF No. 11). On May 1, 2025, Plaintiff filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) (ECF No. 12), to which Defendant filed a renewed Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction. (ECF No. 16.) Plaintiff filed an Opposition to Defendant's Motion on June 12, 2025 (ECF No. 17) and Defendant filed its Reply on June 26, 2025. (ECF No. 18).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(2)

Defendant seeks dismissal of Plaintiff's Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Id.* "[A] court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion." *Id.* at 268. "[N]either discovery nor an evidentiary hearing is required in order for the

3

court to resolve a motion under Rule 12(b)(2)." *Jones v. Mutal of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 544 (D. Md. 2022). "When 'the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.'" *Id.* (quoting *Combs*, 886 F.2d at 676).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). "This '*prima facie* case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* Thus, the court takes "the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson*, 816 F.3d at 268. Still, a plaintiff must ultimately "prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs*, 886 F.2d at 676.

### III. ANALYSIS

Defendant moves for dismissal of all Plaintiff's claims because "Plaintiff's Amended Complaint fails to establish that this [c]ourt may exercise personal jurisdiction over Defendant under applicable federal or state law." (ECF No. 16 at p. 1.) Plaintiff asserts that the court "has personal jurisdiction over Defendant as it has transacted, and continues to transact, business in the State of Maryland and has sent documents to [Plaintiff] in [Maryland] which has caused injury to [him] and which form the basis of this suit." (ECF No. 12 at ¶ 11.)

As an initial matter, "[t]he validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Unlike subject matter jurisdiction,

"[t]he requirement that the court have personal jurisdiction . . . springs not from Article III of the Constitution, but from the Due Process Clause." *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124, 131 (4th Cir. 2019) (citing *Ins. Corp. of Ireland*, 456 U.S. at 702). "Because the personal jurisdiction requirement 'recognizes and protects an individual liberty interest, . . . the requirement may be waived by a defendant's 'express or implied consent to the personal jurisdiction of the court.'" *Id.* (citing *Ins. Corp. of Ireland*, 456 U.S. at 703). "Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Hawkins*, 935 F.3d at 228) (citations omitted). The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of "specific" or "general" jurisdiction. *Id.* The court first addresses the parties' arguments regarding general personal jurisdiction.

A. **General Personal Jurisdiction Over Defendant**

First, Defendant argues that Plaintiff's Amended Complaint should be dismissed because Defendant's "contacts with Maryland are insufficient for this Court to exercise general personal jurisdiction over" it. (ECF No. 16-1 at p. 4.) The court may exercise general jurisdiction over a defendant to hear any and all claims against it when its contacts with the forum are "so constant and pervasive as to render it essentially at home in the forum State." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). "A corporate defendant is 'at home' and under the general jurisdiction of a forum only when it: (1) is incorporated in the forum; (2) has its principal place of business in that forum; or (3), in an 'exceptional case,' has operations that are 'so substantial and of such a nature as to render the corporation at home' in the forum." *Doe 1 v. World Wrestling Ent., LLC*, No. CV JKB-24-

5

3487, 2025 WL 3546316, at *12 (D. Md. Dec. 10, 2025) (quoting *Daimler*, 571 U.S. at 137–39). "[E]stablishing general personal jurisdiction over a corporate defendant outside of its state of incorporation or headquarters location under the 'essentially at home' standard based on its contacts with a forum may properly be regarded as a jurisdictional great white whale." *Troy Brave LLC v. Grantsville Truck & Trailer, LLC*, 692 F. Supp. 3d 516, 522 (D. Md. 2023).

Here, it is undisputed that Defendant is neither incorporated nor has its principal place of business in Maryland. Plaintiff asserts that Defendant is incorporated in Delaware with its principal place of business in Virginia. (ECF No. 12 ¶ 2.) Plaintiff, however, argues that this is an "exceptional case," such that Defendant is deemed at home in Maryland because it "maintains a significant, systematic, and continuous presence" here. (ECF No. 17 at p. 12.) In support of this assertion, Plaintiff alleges that Defendant retains employees, solicits for the hiring of employees, contracts with customers, provides services, and generates revenue in Maryland. *Id.* at p. 13. Defendant responds that this is not the exceptional case and, were Plaintiff right, "every company who provides any 'services for customers in Maryland' or employs Maryland residents will be subject to general personal jurisdiction for any case about any subject in Maryland courts." (ECF No. 18 at p. 3.)

Plaintiff alleges the following facts regarding the extent of Defendant's contacts in the forum. Throughout his employment with Defendant, Plaintiff resided in Maryland and, for much of that time, worked primarily out of his home. (ECF No. 12 at ¶ 3.) Plaintiff asserts, during that same period, other IOMAXIS employees performed work for the company from Maryland, including at least one Maryland resident who worked for IOMAXIS during the year prior to Plaintiff's termination. *Id.* at ¶ 4.[3] Plaintiff also alleges that during his employment, Defendant

---

[3] Plaintiff also names several other IOMAXIS employees listed on LinkedIn as currently working for Defendant in the "Washington DC-Baltimore Area," and in Columbia and Elkridge, Maryland. (ECF No. 12 at ¶ 12 n. 2.)

"regularly provided services for customers in Maryland, including agencies or instrumentalities at Fort George G. Meade, located in Fort Meade, Maryland," and continues to do so. *Id.* at ¶¶ 5–6. Plaintiff was occasionally involved in the provision of Defendant's services in Maryland. *Id.* at ¶ 5. Additionally, Plaintiff asserts that Defendant has posted advertisements on its website for full-time, on-site positions located within the State. *Id.* at ¶¶ 6, 13–15.

Plaintiff primarily relies on the Supreme Court of Maryland's decision in *Goodyear Tire & Rubber Co. v. Ruby,* 312 Md. 413 (1988), to support his general jurisdiction argument. That reliance is misplaced. In *Goodyear*, the Maryland Supreme Court acknowledged that "there may be contacts reflecting continuous and systematic general business conduct that will be sufficient to support the exercise of jurisdiction over a claim that neither arises out of nor is directly related to the conduct of the defendant within the forum." *Id.* at 422. Critically, the court emphasized that "the burden is on the party asserting jurisdiction to produce the facts necessary for the determination of [personal jurisdiction.]" *Id.* at 424.

Applying that standard, the court held that the plaintiff failed to meet her burden where the only asserted contacts were that defendant Goodyear had appointed a resident agent in Maryland, conducted a "national business" that included Maryland, and had stores located within the state. *Id.* at 422, 424. The court concluded that those generalized allegations, without evidence demonstrating the nature and extent of Goodyear's contacts with Maryland, were insufficient to establish general jurisdiction. *Id.* at 423–24. Accordingly, the court remanded the case "to permit the introduction of additional evidence, and a determination by the trial judge of whether Goodyear ha[d] contacts with [Maryland] reflecting continuing and systematic general business conduct sufficient to support the exercise of jurisdiction." *Id.* at 426.

As the Supreme Court held in *Daimler*, "approv[ing] the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business' . . . is unacceptably grasping." 571 U.S. at 138. Moreover, "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 138–39 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[I]n-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state]." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (holding that a non-resident defendant corporation was not subject to general jurisdiction in the forum state even though it had over 2,000 miles of railroad track and more than 2,000 employees in the state). The general jurisdiction "inquiry calls for an appraisal of a corporation's activities in their entirety; a corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* (quoting *Daimler*, 571 U.S. at 140, n. 20) (internal quotation marks omitted).

Here, Defendant IOMAXIS cannot be said to be "at home" in Maryland under the strict standards set forth in *Daimler*. Out-of-state corporations are not "at home" simply because they engage in some business in Maryland. *See Fidrych*, 952 F.3d at 134 (holding that the corporate defendant's contacts with the forum state were not substantial enough to render it "at home" because its operations in the forum state were "very limited in scope and represent[ed] a small fraction of the company's overall operations."); *Phillips v. Brit. Airways*, 743 F. Supp. 3d 702, 709 (D. Md. 2024) (concluding that the plaintiff did not carry her burden of establishing a prima facie case for general jurisdiction because she could not distinguish the out-of-state defendant's relationship with Maryland from its relationship with other states where it conducted business but

8

where it was not incorporated nor headquartered); *Kelly v. Hard Rock Cafe Int'l (STP), Inc.,* No. 1:22-CV-00111-JMC, 2022 WL 5054086, at *3 (D. Md. Oct. 4, 2022) (finding that there was no general jurisdiction over an out-of-state defendant that operated a restaurant within the forum).

As Plaintiff notes, "IOMAXIS is a national corporation with clients in Maryland, as well as other states." (ECF No. 17 at p. 13.) Plaintiff fails to sufficiently distinguish Defendant's contacts with Maryland from its contacts with other states in which it conducts business, but where it is neither incorporated nor headquartered, such that Defendant can be considered "at home" in Maryland. Accordingly, Plaintiff's factual allegations are insufficient for this court to exercise general personal jurisdiction over Defendant.

### B. Specific Personal Jurisdiction Over Defendant

Next, Defendant argues that the court lacks specific personal jurisdiction over it because Plaintiff's claims do not arise out Defendant's business conduct, or acts or omissions, in Maryland. (ECF No. 16-1 at pp. 4–7.) Additionally, Defendant argues that the court's exercise of personal jurisdiction over it would not comport with due process. *Id.* Plaintiff counters that the court may exercise specific jurisdiction over Defendant because Plaintiff's "claims arise directly out of [Defendant's] repeated contacts with Maryland." (ECF No. 17 at p. 13.)

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). The court may exercise specific jurisdiction over a defendant if it has "continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." *Fidrych*, 952 F.3d at 132 (quoting *Daimler*, 571 U.S. at 126–27). In order for the court to assert personal jurisdiction over non-resident defendants, like Defendant here, two conditions must be satisfied: (1) the exercise of jurisdiction must be

authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs. Inc.,* 84 F.3d 132, 134 (4th Cir. 1994)).  It is well settled in Maryland that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the United States Constitution.  *Mohamed v. Michael*, 279 Md. 653, 657–58 (1977).  Accordingly, this court's statutory and constitutional inquiry is merged for purposes of assessing its personal jurisdiction.  *Stover*, 84 F.3d at 135.

### 1. The Maryland Long-Arm Statute

"The Maryland long-arm statute . . . limits specific jurisdiction to cases where the cause of action arises from any act enumerated in the statute itself.  Thus, a plaintiff must identify a specific Maryland statutory provision authorizing jurisdiction."  *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est.,* 374 F. Supp. 2d. 465, 472 (D. Md. 2005) (citation omitted); *see also Legends Title, LLC v. Cap. One, Nat'l Ass'n*, 659 F. Supp. 3d 637, 644 (D. Md. 2023) ("Maryland's long-arm statute requires Plaintiffs to identify the section of the long-arm statute on which they rely.") (citing MD. CODE ANN., CTS. & JUD. PROC. § 6-103(a)); *Ottenheimer Publishers, Inc. v. Playmore, Inc*., 158 F. Supp. 2d 649, 652 (D. Md. 2001) (noting that "[i]t is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction.").  This requirement can be met through a complaint or in opposition to a 12(b)(2) motion*. Hausfeld v. Love Funding Corp*., 16 F. Supp. 3d 591, 597 (D. Md. 2014).

Maryland's long-arm statute provides:

> **(a)** If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

> **(b)** A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>> **(1)** Transacts any business or performs any character of work or service in the State;
>>
>> **(2)** Contracts to supply goods, food, services, or manufactured products in the State;
>>
>> **(3)** Causes tortious injury in the State by an act or omission in the State;
>>
>> **(4)** Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>>
>> **(5)** Has an interest in, uses, or possesses real property in the State; or
>>
>> **(6)** Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(a) and (b).

In his Opposition, Plaintiff asserts that the court "can exercise [personal] jurisdiction over [Defendant] because its systematic and continuous activities in Maryland bring it within the purview of [] §§ 6-103(b)(1), (2), (4), and (5) of the Maryland long-arm statute." (ECF No. 17 at p. 7.)

      a.  <u>§ 6-103(b)(1)</u>

Section 6-103(b)(1) authorizes jurisdiction over a party who "[t]ransacts any business or performs any character of work or service in the State[.]" "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or

11

intentional advertising and selling in the forum state." *Cranford v. Tenn. Steel Haulers, Inc.*, No. ELH-17-2768, 2018 WL 3496428, at *5 (D. Md. July 20, 2018) (quoting *Aphena Pharma Sols.- Md. LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012)). "'[S]everal contacts related to the cause of action only tangentially' do not establish personal jurisdiction." *Id.* (quoting *Stisser v. SP Bancorp, Inc.*, 234 Md. App. 593, 630 (2017)).

Plaintiff argues that Defendant is subject to this court's jurisdiction under § 6-103(b)(1) because Defendant and its employees "provided [and continue to provide] services to agencies and instrumentalities" located in Maryland, Defendant "is actively recruiting additional employees for roles in Maryland," and Defendant "contracts with entities" and "generates revenue in Maryland." (ECF No. 17 at p. 8.)  Defendant does not dispute Plaintiff's allegations regarding its contacts with Maryland.  Instead, Defendant argues that the conduct giving rise to Plaintiff's claims, the mailing of two Forms 1099-MISC to Plaintiff while he resided in Maryland, does not constitute "transacting business" in Maryland within the meaning of § 6-103(b)(1).  (ECF No. 18 at p. 5.)

As set forth above, § 6-103(a) requires that Plaintiff's cause of action "aris[e] from any act enumerated in" § 6-103(b).  "In other words, the plaintiff must 'show[] some purposeful act in Maryland in relation to one or more of the elements of plaintiff's cause of action.'" *Cranford*, 2018 WL 3496428, at *5 (quoting *Talegen Corp. v. Signet Leasing & Fin. Corp.*, 104 Md. App. 663, 670 (1995)).  Plaintiff argues that the claims asserted in his "Amended Complaint are directly related to [Defendant's] contacts in" Maryland.  (ECF No. 17 at p. 14.)  Plaintiff resided in Maryland throughout his employment and ownership relationship with Defendant, and performed services for the company from his home office in Maryland. *Id.*

The Forms 1099-MISC at issue were mailed by Defendant to Plaintiff's Maryland home; and Plaintiff asserts that Defendant's counsel "has suggested . . . that this case may arise out of

[Defendant's] alleged waiver of certain debts owed by [Plaintiff] to [Defendant]." (ECF No. 12 at ¶ 16.)  Plaintiff denies the existence of any such debts, but asserts that, even accepting Defendant's suggestion, "the only circumstances that could give rise to these alleged debts is [Plaintiff's] membership in, or employment by, [Defendant] (both of which took place in Maryland) or his involvement in the [Maryland] [l]itigations." *Id.*

Defendant points to several decisions of this court holding that an out-of-state defendant's contacts with Maryland, consisting only of letters and mail to a plaintiff, "without more, do not equal transacting business, even when the long arm statute at issue had been declared to reach the outer bounds of due process." *Craig v. Gen. Fin. Corp. of Illinois*, 504 F. Supp. 1033, 1038 (D. Md. 1980); *see also Am. Ass'n of Blood Banks v. Bos. Paternity, LLC*, No. CIV.A. DKC-2008-2046, 2009 WL 2366175, at *6 (D. Md. July 28, 2009) (holding nonresident defendant's infrequent contact via mail was insufficient to satisfy § 6-103(b)(1)).

Those cases are inapposite to the present case.  In *Craig,* the defendant's sole contact with Maryland consisted of the defendant's letters to the plaintiff's employer concerning his indebtedness to the defendant with no allegation that the defendant had ever conducted business in Maryland, had employees in Maryland, or purposely availed itself of the forum.  504 F. Supp. at 1035.  Similarly, in *American Association of Blood Banks*, the plaintiff alleged that the defendant transacted business in Maryland within the meaning of § 6-103(b)(1) based solely on the defendant's mailing of a one-page membership application and its subsequent mailing of its annual membership dues to locations within Maryland.  2009 WL 2366175, at *6.  The court found that the plaintiff failed to meet its burden of establishing a *prima facie* case of jurisdiction because the plaintiff did not "allege any additional contact with [d]efendants–such as extensive negotiations or

the formation of a contract in Maryland–to demonstrate that this limited contact by mail would qualify as 'transacting business' within the meaning of subsection (b)(1)." *Id.*

Here, by contrast, Defendant's mailing of the Forms 1099-MISC was not an isolated contact in Maryland tangentially related to Plaintiff's cause of action. As stated previously, Plaintiff alleges that Defendant employed him while he lived in Maryland, it provided services to Maryland customers, and generated revenue from those services. (ECF No. 17 at p. 8.) He further alleges that issuance of the tax forms "is almost certainly related to his employment with, or ownership of, IOMAXIS, both of which occurred in Maryland." (ECF No. 17 at p. 15.)[4,5] Although not required to do so, Defendant has offered no explanation for the basis on which it issued the tax forms. As such, the court is left with Plaintiff's allegations that Defendant purposefully directed its business activities toward Maryland by forming an employment and ownership relationship with Plaintiff while he lived and worked in the State, and that, based on that business conduct and subsequent relationship, Defendant mailed the allegedly fraudulent tax forms to Plaintiff in Maryland.

Accepting all well-pled allegations in Plaintiff's Amended Complaint as true, and taking the allegations and available evidence relating to personal jurisdiction in the light most favorable to Plaintiff, the court concludes that Plaintiff has plausibly alleged that Defendant "transacted

---

[4] Notably, IRC § 6041 provides, in relevant part, that the requirement to provide tax returns, such as Form 1099-MISC, applies to "[a]ll persons engaged in a trade or business and making payment in the course of such trade or business to another person." 26 U.S.C. § 6041(a).

[5] Plaintiff additionally contends that Defendant's issuance of the tax forms stems from the prior actions filed by Defendant against Plaintiff in this court and that such litigation constitutes sufficient contacts with the forum. (ECF No. 17 at p. 15.) The court disagrees. As Defendant notes, "the filing of a lawsuit does not constitute regularly doing business in Maryland and is not a persistent course of conduct in Maryland." *Pinner v. Pinner*, 240 Md. App. 90, 110 (2019), *aff'd*, 467 Md. 463 (2020).

business" in Maryland and is subject to this court's jurisdiction within the meaning of § 6-103(b)(1).[6]

### 2. *Due Process Clause of the Fourteenth Amendment*

Defendant argues that, even if it were subject to personal jurisdiction under Maryland's long-arm statute, "haling [Defendant] into this [c]ourt to defend this case would violate due process." (ECF No. 16-1 at p. 8.) Personal jurisdiction over a non-resident defendant is constitutionally permissible where the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted). In *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, the Fourth Circuit explained:

> The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit. If those contacts form the basis for the suit, they may establish "specific jurisdiction." In determining whether specific jurisdiction exists, we consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105, 123 S.Ct. 868, 154 L.Ed.2d 773 (2003); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

334 F.3d 390, 397 (4th Cir. 2003).

---

[6] Because the court concludes that Plaintiff has plausibly alleged the exercise of specific jurisdiction is authorized under § 6-103(b)(1), it declines to reach the additional subsections of § 6-103(b) cited by Plaintiff. "It is sufficient to sustain personal jurisdiction over a defendant . . . if a plaintiff can show that the requirements of any one of the tests spelled out in the subsections have been met." *Tate v. Blue Cross of Washington & Alaska*, 59 Md. App. 206, 217 (1984). The court notes, however, that Defendant's Motion and Reply do not address the additional subsections of § 6-103(b) cited by Plaintiff, and as such, concede the argument.

"[E]ven a single act" between a non-resident defendant and the forum state may establish personal jurisdiction if it creates a "substantial connection" with the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).  Also relevant is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see Planet Techs., Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 397, 401–404 (D. Md. 2010) (citing *Burger King Corp.*, 471 U.S. at 476).  The Supreme Court has emphasized "[w]ith respect to interstate contractual obligations, . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).

As discussed *supra*, Plaintiff has adequately alleged that Defendant purposefully availed itself of the privilege of conducting activities within Maryland and that his claims arise out of Defendant's activities directed at Maryland by transacting business within the State—including the formation of its employment and ownership relationship with Plaintiff—and mailing the Forms 1099-MISC to Plaintiff in Maryland in connection with that activity.  Accordingly, Plaintiff's allegations are sufficient to satisfy the first two prongs of the specific-jurisdiction inquiry set forth by the Fourth Circuit.

As to the third prong, the court finds the exercise of personal jurisdiction over Defendant constitutionally reasonable.  "[I]n determining whether the exercise of personal jurisdiction over the defendant is reasonable, courts look to factors such as:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of

> disputes; and (5) the interests of the states in furthering substantive social policies.

*Planet Techs., Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 397, 401–02 (D. Md. 2010) (quoting *Consulting Eng's Corp.*, 561 F.3d at 279).

The court does not find that litigating this action would impose an undue burden on Defendant. As noted previously, Defendant has actively litigated with Plaintiff in this forum, including instituting an action against Plaintiff, which is currently pending. While not a relevant consideration in the long-arm statute contacts analysis, the court strains to see how Defendant can complain that it will be burdened by defending an action against Plaintiff when it has chosen this forum to sue him. Further, Maryland has a significant interest in providing a forum for its residents to seek redress for alleged injuries arising from conduct directed into the State. Finally, Plaintiff resides in Maryland and alleges that he suffered injury in Maryland as a result of Defendant's conduct. Litigating in this forum promotes Plaintiff's interest in obtaining convenient and effective relief. Therefore, the exercise of personal jurisdiction over Defendant comports with the due process requirements of the Fourteenth Amendment.

Accordingly, the court finds that Plaintiff makes a *prima facie* showing of specific personal jurisdiction over Defendant.

## IV. CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 16) shall be **DENIED**.

January 30, 2025

/S/
_____
Julie R. Rubin
United States District Judge